UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 12-28-ART-HAI-1 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| EUGENE SLONE, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Death is different.[1]  For good reason, death penalty cases demand a different level of scrutiny.  But such scrutiny does not justify the Court trampling on the Constitution.  Here, Defendant Eugene Slone asks this Court to manage the internal processes of the Department of Justice.  Slone specifically wants the Court to impose a schedule for his presentation of mitigating evidence to federal prosecutors so he can convince them not to seek the ultimate punishment.  This the Court cannot do without violating the constitutional separation of powers.  The Court therefore must deny Slone's motion.

## BACKGROUND

The United States alleges Eugene Slone murdered two federal informants.  *See* R. 129 (second superseding indictment).  He is therefore eligible for the death penalty.  *See* 18 U.S.C. § 1513(a)(2)(A) (referencing 18 U.S.C. § 1111, which establishes death as a penalty for first degree murder).  To seek capital punishment, however, the government must comply

---

[1] *See Gregg v. Georgia*, 428 U.S. 153, 188 (1976) ("[T]he penalty of death is different in kind from any other punishment imposed under our system of criminal justice.").

with the Federal Death Penalty Act ("FDPA"). *See* 18 U.S.C. §§ 3591–3598. The FDPA requires the government to file timely notice that it intends to pursue the death penalty and that "a sentence of death is justified." *Id.* at § 3593(a).

The Department of Justice ("DOJ") has decided not to seek the death penalty without the input of the defendant. Thus, the Attorney General has established internal policies and procedures that allow the defendant to present mitigating evidence to the DOJ and to make his case as to why death is an inappropriate punishment. These processes are found in the United States Attorney's Manual ("USAM") and are commonly known as the Death Penalty Protocol ("DPP"). *See* USAM §§ 9-10.010 to 9-10.190.

Following that protocol, the DOJ Capital Case Unit scheduled a defense presentation in this case. *See* R. 345 at 1. Slone's counsel immediately informed local Assistant United States Attorney Jason Parman that they would not be ready by the date the Department of Justice set. *Id.* Parman offered to pass along a message and alternative dates to the DOJ but explained that he could not guarantee a new date. *Id.* at 2. Rather than accept Parman's offer, Slone moved the Court to set the schedule "to ensure that the date is changed." *Id.* He seeks nearly a four-month delay. *Id.* Slone is concerned that the government will move unreasonably quickly, requiring defense counsel to present mitigating evidence before they are prepared. *Id.* at 1–2.

So how does Slone justify such an intrusion into the internal process of the Department of Justice? He primarily argues that the Judicial Conference has issued guidelines via the Criminal Justice Act ("CJA") that justify court intervention. *Id.* at 9–10. And he is correct that the guidelines make such a recommendation; in an effort to control litigation costs they specifically endorse courts setting a date for the defense presentation of

mitigating evidence. *See Guide to Judiciary Policy*, Vol. 7, Pt. A, Ch. 6, § 670(b)(1), *available at* http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/CJAGuidelinesForms/vol7PartA/vol7PartAChapter6.aspx#670.

After a hearing, the Court granted in part and denied in part Slone's motion. *See* R. 357 at 6–7. While the Court set the date Slone requested for submission of the government's notice of intent to seek death, it refused Slone's bid to establish internal DOJ deadlines for the presentation of mitigating evidence. The Court promised to explain its reasons for denying his request in a subsequent opinion. This is that opinion.

## DISCUSSION

The Court does not have the authority to manage the DOJ's internal processes. A few courts have found such authority, *see United States v. McGill*, No. 09-2856, 2010 WL 1571200 (S.D. Cal. Apr. 16, 2010); *United States v. Benavides*, No. 06-62, R. 123 (D. Mont. Oct. 21, 2008) (order amending scheduling order), while others have not, *see United States v. Hardrick*, No. 10-202, 2011 WL 2516340 (E.D. La. June 22, 2011); *United States v. Jackson*, No. 04-801, 2006 WL 59559 (S.D.N.Y. Jan. 9, 2006). Despite the dearth of opinions in this area, one court stated that judges "routinely enter scheduling orders" setting a date for the presentation of mitigating evidence to the DOJ. *See McGill*, 2010 WL 1571200 at *3.

However common such orders are, courts lack the authority to schedule the defendant's presentation under the Death Penalty Protocol. To begin with, no binding rule of law guarantees Slone any presentation at all. As merely internal DOJ guidance, the Protocol does not provide an independent basis for the Court to issue the scheduling order Slone seeks. And the same goes for the Judicial Conference's CJA Guidelines, since they are

3

similarly nonbinding. Neither the DPP nor the CJA Guidelines creates an enforceable substantive or procedural right.

All that remains, then, is the Court's reservoir of constitutional authority inherent in its exercise of "[t]he judicial Power." U.S. Const., Art. III, § 1. That authority is limited, however, by the separation of powers. While the Court has inherent power to manage its docket and to some extent supervise the administration of criminal justice, it may not direct the Executive Branch how to exercise its traditional prosecutorial discretion. That discretion includes the decision whether to seek the death penalty. So, even relying on its administrative and supervisory authority, the Court may not direct the process by which the government decides whether a death sentence is appropriate. Despite the Judicial Conference's guidance encouraging district courts to exercise their scheduling authority to control litigation costs in capital cases, the Court may not implement the DPP. That implementation remains in the sound discretion of the Department of Justice.

I. **Neither the Death Penalty Protocol nor the CJA Guidelines Authorize This Court To Schedule the Presentation of Mitigating Evidence to the DOJ**

The Death Penalty Protocol and the Judicial Conference's CJA Guidelines cannot empower this Court to issue the scheduling order Slone seeks because neither carries the force of law. If the Court has the power to issue such an order, that power must come from its inherent authority.

**The Death Penalty Protocol:** As part of the U.S. Attorneys' Manual, the DPP merely guides prosecutorial discretion, creating no legal rights. By the USAM's plain terms, it is nonbinding: "The Manual provides only internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or

procedural, enforceable at law by any party in any matter civil or criminal." *See* USAM § 1-1.100, 1997 WL 1943989, at *1 (May 2009). The Protocol therefore provides no procedural rights, but rather is a "mere aid[ ] to the exercise of the [Justice Department's] independent discretion." *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970). Like executive orders, the DPP is not judicially enforceable because it is expressly designed only to enhance the DOJ's internal management. *See Michigan v. Thomas*, 805 F.2d 176, 187 (6th Cir. 1986). Suspects and defendants therefore are "on notice that they lack enforceable rights in DOJ policies and procedures." *United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001). In light of the Manual's disclaimer, the Sixth Circuit recognizes that courts may not remedy a violation of those policies. *See United States v. Myers*, 123 F.3d 350, 355–56 (6th Cir. 1997). Every circuit to have considered the question agrees.[2] So, even if the DOJ had violated the Protocol—which is not the case here—this Court could not order the government to comply.

**The CJA Guidelines**: Slone likewise has no rights under the CJA Guidelines because they are equally as nonbinding as the DPP. With rare exception, the Judicial Conference publishes only "suggestions and recommendations." *See* 28 U.S.C. § 331. While entitled to "respectful consideration," its policy conclusions generally are not binding on courts. *Hollingsworth v. Perry*, 558 U.S. 183, 193 (2010) (citation and internal quotation omitted). Like the U.S. Attorneys' Manual, the CJA Guidelines create no enforceable rights because

---

[2] *See In re Grand Jury Subpoena*, 646 F.3d 159, 169 (4th Cir. 2011); *United States v. Cooks*, 589 F.3d 173, 184 (5th Cir. 2009); *United States v. Lopez-Matias*, 522 F.3d 150, 155–56 (1st Cir. 2008); *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005); *United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001); *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000); *United States v. Blackley*, 167 F.3d 543, 548–49 (D.C. Cir. 1999); *Nichols v. Reno*, 124 F.3d 1376, 1377 (10th Cir. 1997); *San Pedro v. United States*, 79 F.3d 1065, 1070–71 (11th Cir. 1996); *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994); *United States v. Gillespie*, 974 F.2d 796, 800–02 (7th Cir. 1992).

they were not adopted pursuant to an enabling statute authorizing the Judicial Conference to act with the force of law. As their name suggests, they are merely advisory. On their own, the Guidelines thus cannot empower this Court to issue the scheduling order Slone seeks. The two district courts that found judicial authority to fashion a schedule for the defense presentation of mitigating evidence admittedly did not hold to the contrary. Rather than treating the CJA Guidelines as mandatory, both courts relied on the Guidelines as an endorsement by the Judicial Conference of their inherent docket-management authority to implement the DPP. *See McGill*, 2010 WL 1571200 at *3 (noting the applicable Guideline but ultimately relying on the court's "inherent authority" to manage litigation and promote the "speedy and orderly administration of justice" (citation omitted)); *Benavides*, R. 123 at 5 ("From the perspective of the Judicial Conference . . . there is no doubt that such authority exists."). But, for the reasons given below, the inherent authority of the courts does not justify such a bald intrusion into the core functions of another branch. The CJA Guidelines therefore assume a power district courts simply do not have.

**II.     The Court's Inherent Powers Do Not Include the Authority to Direct the DOJ's Process for Deciding Whether to Seek the Death Penalty**

Like the executive and legislative branches, Article III courts possess "implied powers" necessary to the exercise of their core authority, the judicial power. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)). With hazy borders and in certain cases questionable legitimacy, these inherent powers defy neat classification. *See generally* Robert J. Pushaw, Jr., *The Inherent Powers of Federal Courts and the Structural Constitution*, 86 IOWA L. REV. 735 (2001). Pure doctrinal clarity is not required, however, to determine whether this Court has the power to issue the

scheduling order Slone seeks. It plainly does not. Two distinct reasons lead to that conclusion: the presentation of mitigating evidence to the DOJ does not affect the Court's proceedings, and judicial interference with the DPP would violate the Constitution's separation of powers.

**The Court's Inherent Powers:** No inherent power permits the Court to schedule Slone's presentation to the Justice Department. Only two sources of authority could even potentially support such an order: (1) the Court's administrative power to manage its docket, *see In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir. 1993); and (2) the Court's limited supervisory power over criminal procedure, *see United States v. Gjieli*, 717 F.2d 968, 977 (6th Cir. 1983). Absent a violation of law, however, those powers are restricted to internal housekeeping. The Court therefore may not grant Slone's scheduling request because presentation of mitigating evidence to the DOJ does not implicate judicial process.

The possibility that the government will implement the Death Penalty Protocol too quickly is beyond the Court's administrative power to regulate. Pursuant to that power, district courts may direct proceedings efficiently for the benefit of all involved in litigation. *See Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010). Judges do not have free reign to pursue efficiency beyond the Courts; they are limited to managing judicial business. *See Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (recognizing district courts' inherent power "to manage their *own* affairs so as to achieve the orderly and expeditious disposition of cases" (emphasis added)). As a result, the Court has no administrative interest here because its proceedings are simply not affected by the government's schedule for the presentation of mitigating evidence. For example, Slone is not asking for additional time to prepare for a hearing or respond to a motion. Unlike motions and hearings, Slone's presentation to the

7

DOJ does not involve the Court. If there is any risk to the Court's docket, it is delay from Slone's proposed schedule rather than the Justice Department's implementation of the DPP.[3]

Without any threat to judicial proceedings, the DOJ's schedule is also outside the reach of the Court's "inherent power to supervise the administration of criminal justice." *Gjieli*, 717 F.2d at 977. Courts may use that power to fashion procedures beyond those that the Constitution or statute require, but only to remedy the violation of recognized rights, preserve the integrity of judicial proceedings, and deter illegal conduct. *See United States v. Bartel*, 19 F.3d 1105, 1110 (6th Cir. 1994). Like courts' docket management authority, the supervisory power is limited to internal concerns. *See United States v. Williams*, 504 U.S. 36, 45 (1992) (explaining that federal courts' authority to supervise criminal proceedings is limited to the "power to control their *own* procedures"). Minding the internal affairs of another branch exceeds that power because "rarely, if ever, will judicial integrity be threatened by conduct outside the courtroom that does not violate a federal statute, the constitution or a procedural rule." *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991). The Court therefore lacks the authority to direct the lawful work of the Executive Branch that has no effect on its proceedings. The Justice Department's implementation of the DPP is no exception.

---

[3] Even pursuant to the Judicial Conference's guidance, there is no reason to interfere with DOJ's management of the Protocol in this case. First of all, the entire purpose of the CJA Guideline Slone relies on is to control litigation costs by *speeding up*, rather than slowing down, the DOJ's process. *See* Jon B. Gould & Lisa Greenman, Judicial Conference Committee on Defender Services, *Update on the Cost and Quality of Defense Representation in Federal Death Penalty Cases* (September 2010), at 106, *available at* http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Viewer.aspx?doc=/uscourts/FederalCourts/AppointmentOfCounsel/FDPC2010.pdf ("Courts should exercise their supervisory powers to ensure that the death penalty authorization process proceeds expeditiously."). Regardless, there is no threat of wasted resources here because the government's plan is already cost-effective. The DOJ is promising Slone more than even the DPP requires: a second bite at the apple. In the event he discovers new mitigating evidence after his initial presentation, DOJ has assured him it will consider the evidence. R. 350 at 2 n.1. Promptly implementing the DPP with this safety valve minimizes costs by avoiding unnecessary delay.

**The Separation of Powers:** The Court must decline Slone's bid to micromanage the Death Penalty Protocol for a more fundamental reason: it would violate the Constitution. *See Thomas v. Arn*, 474 U.S. 140, 148 (1985) ("Even a sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions."). Courts may not "encroach[ ] on the central prerogatives" of a coequal branch. *Miller v. French*, 530 U.S. 327, 341 (2000). Slone's motion pits this Court's implied powers against the Executive's constitutionally delegated prosecutorial discretion. When judicial process and executive prerogative conflict, courts must "resolve those competing interests in a manner that preserves the essential functions of each branch." *United States v. Nixon*, 418 U.S. 683, 707 (1974). The separation of powers thus constrains the Court's inherent authority.

Our Nation's history and traditions mark the boundaries of the Judiciary's implied powers. The Supreme Court's decision in *Williams* is particularly on point, illustrating those constraints in a closely analogous setting. The lower courts in that case asserted the inherent authority to fashion their own procedures for the grand jury. *See Williams*, 504 U.S. at 39–40. Not so fast said the Supreme Court: in light of the grand jury's strong "tradition of independence" from judicial supervision, courts have no such freestanding power. *Id.* at 47–50. Moreover, the Supreme Court specifically disavowed any inherent authority to reshape the historical relationship between prosecutors and judges. *Id.* at 50. District courts must therefore employ the same historical lens used in *Williams* to evaluate any invitation to exercise their inherent power.

As *Williams* suggests, history counsels against issuing the scheduling order Slone seeks. Like the grand jury, prosecutors have a well-recognized tradition of autonomy from

9

the Judicial Branch. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (citing cases dating back to the mid-nineteenth century supporting the conclusion that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion"); *see also* Saikrishna Prakash, *The Chief Prosecutor*, 73 GEO. WASH. L. REV. 521, 546–69 (2005) (describing the American and English traditions of executive control over prosecution). In our adversarial system, investigatory and prosecutorial decisions are "made outside the supervision of the court." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987). Making those decisions is a "core executive constitutional function." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). The separation of powers thus requires respect for prosecutorial discretion. *See United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) ("It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions.").

This discretion includes the decision whether to seek the death penalty. For better or worse, a prosecutor has wide latitude to calibrate punishment through his charging decisions. He may charge a felony, for example, even when a misdemeanor carrying a lighter sentence is also available.[4] *See United States v. Schaffner*, 715 F.2d 1099, 1102 (6th Cir. 1983). The appropriate severity of punishment is thus an important aspect of a prosecutor's charging decision. The DOJ's decision to pursue a death sentence is directly analogous and equally

---

[4] That discretion works both ways, of course: a prosecutor is free to exercise leniency by charging a less serious offense than the facts could support in order to avoid a harsh mandatory minimum. *See* Attorney General Eric Holder, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (August 12, 2013), *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html.

within its unreviewable discretion. Ordering the Justice Department to consider Slone's presentation of mitigating evidence on a particular timeline would obliterate that discretion by imposing judicially-mandated procedures for deciding whether to seek death. Court intervention would interfere with prosecutors' "position in our constitutional structure." *See Myers*, 123 F.3d at 356. The Court must therefore stay its hand.

### III. The Court Possesses the Authority To Establish a Deadline for the Government To File Its Notice of Intent To Seek Death

While the Court may not constitutionally set the DOJ's internal schedule, it can, however, set a deadline for the government to file its death notice as Slone requested. A defendant is *legally entitled* not to stand trial for his life unless the government files that notice "a reasonable time before the trial." *See* 18 U.S.C. § 3593(a); *see also United States v. Ferebe*, 332 F.3d 722, 731–32 (4th Cir. 2003) (striking a death notice filed without reasonable time remaining until the scheduled trial date); *United States v. Wilk*, 452 F.3d 1208, 1223 (11th Cir. 2006) (granting a continuance as a remedy for unreasonably short notice). Unlike the presentation of mitigating evidence, then, the timing of the government's death notice directly implicates both the Court's administrative concerns and a defendant's legally guaranteed rights. A filing deadline is thus well within the Court's inherent power to manage its own proceedings.

By setting a deadline for the government's death notice, the Court can alleviate some of Slone's concerns while respecting its constitutional boundaries. Although that deadline cannot force DOJ to delay the presentation of mitigating evidence in this case, it can alleviate any undue pressure on the government to proceed faster than necessary. What is more, such a deadline simultaneously acts as a backstop guaranteeing capital defendants a reasonably

speedy process: if the government intends to comply with the DPP, the Justice Department must hear a defendant's mitigating evidence before the window to seek death closes. A death notice deadline can in this way have a similar effect as a more intrusive scheduling order.[5] Even without Court intervention, however, Slone is actually *better off* than if the Court had imposed his requested timetable because DOJ is promising to consider any new evidence he finds after his initial presentation. *See* R. 350 at 2 n.1. Slone has thus received the ultimate relief he seeks—more time. The Court's approach admittedly does not offer capital defendants the full assurance they desire, since DOJ could still go back on its word. Nevertheless, imposing a filing date for the government's death notice has the essential virtue of consistency with the Constitution.

## CONCLUSION

Both law and wisdom counsel restraint. The Constitution leaves implementation of the Death Penalty Protocol to the sound discretion of the Department of Justice. And a heavy judicial hand might actually do more harm to capital defendants than good. Intrusive micromanagement of the Justice Department might deter the development of policies like the Protocol or even cause DOJ to abandon it altogether. *See United States v. Caceres*, 440 U.S. 741, 755–56 (1979) (noting that rigid judicially fashioned remedies for the violation of internal law enforcement guidelines "could have a serious deterrent impact on the

---

[5] So, even if a court is concerned that the government will drag its feet—the opposite of Slone's concern here—district judges still have effective tools to move capital litigation along without directly managing the Death Penalty Protocol. Contrary to one court's assumption, judges are not beholden to the DOJ's sluggish pace. *See McGill*, 2010 WL 1571200 at *3 (justifying a scheduling order pursuant to its docket management powers "[b]ecause any delay by the Attorney General in making the decision whether to seek the death penalty would impact the trial date").

formulation of additional standards to govern prosecutorial . . . procedures"). Courts should thus remain mindful of the law of unintended consequences.

Accordingly, for the reasons described in this opinion, it is **ORDERED** that Slone's motion for an order scheduling the presentation of mitigating evidence to the Department of Justice, R. 345, is **DENIED**.

This the 13th day of September, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge