UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,     )
     )
     Plaintiff,     )     Criminal No. 12-28-ART-HAI-1
     )
v.     )
     )     **MEMORANDUM OPINION**
EUGENE SLONE,     )     **AND ORDER**
     )
     Defendant.     )

*** *** *** ***

Defendant Eugene Slone moves the Court to order immediate disclosure of virtually all the government's evidence in this case. He argues the Constitution requires such wide-ranging discovery because it is necessary to his participation in the Death Penalty Protocol—the Department of Justice's internal process for deciding whether to seek the death penalty. Slone also maintains that the Court's inherent powers permit it to order such intrusive disclosure. The Constitution, however, only guarantees Slone the discovery necessary to a fair trial. Since the DOJ's Protocol is a purely executive process having nothing to do with trial, the Court may not rely on either the Constitution or its inherent powers to order the immediate discovery Slone seeks.

## BACKGROUND

The United States accuses defendant Eugene Slone of murdering two federal informants, a capital offense. *See* R. 382 at 1. Before the government decides to seek the death penalty, however, Slone will have the chance to present mitigating evidence to the Department of Justice ("DOJ") pursuant to its internal Death Penalty Protocol ("DPP"). *Id.*

at 2. Slone now moves for immediate, court-ordered discovery of effectively all evidence relevant to the government's decision whether to pursue a death sentence. *See* R. 352. He specifically seeks: 1) all exculpatory and impeachment evidence (*Brady* and *Giglio* material); 2) all evidence regarding aggravating and mitigating factors; and 3) all evidence pertaining to the strength of the government's case against Slone. *Id.* at 1. Slone argues that due process and the right to effective assistance of counsel compel such comprehensive disclosure because "[w]ithout it, the defense will be unable to demonstrate weaknesses in the Government's case and its witnesses to the U.S. Attorney or to the [DOJ Capital Case Unit]." *Id.* at 5. Even if the Constitution does not require disclosure at this stage, however, Slone also maintains that "[t]his Court has the inherent authority to order discovery beyond the bounds of the discovery rules." *Id.* at 11.

The government, for its part, has already agreed to disclose a great deal. Indeed, in response to a prior discovery motion, the prosecution consented to a court-monitored procedure proposed by Slone for handling subsequent *Brady* requests. *See* R. 357 at 5. The government pledged to promptly disclose or provide to the Court for *in camera* review any evidence that arguably qualifies as *Brady* material. *Id.* But for reasons beyond the Court, Slone does not seem interested in utilizing his own process. *See* R. 361 (motion for release of blood splatter evidence). Regardless, the government has to date complied with all of Slone's discovery requests with only one consistent exception: the prosecution refuses to disclose Jencks Act material and any evidence potentially identifying its witnesses. R. 358 at 2–4. In response to Slone's most recent discovery motion, the government also objects on work product grounds to immediate disclosure of aggravating and mitigating factors relevant

to its decision whether to seek the death penalty. *Id.* at 1–2. After hearing argument, the Court now denies Slone's motion.

## DISCUSSION

Neither the Constitution nor this Court's inherent authority justifies granting Slone effectively complete access to the prosecution's case file. Relying in part on *Brady v. Maryland*, 373 U.S. 83 (1963), several district courts have ordered discovery at the death penalty authorization stage. *See, e.g.*, *United States v. Delatorre*, 438 F. Supp. 2d 892, 900–01 (N.D. Ill. 2006) (citing cases). More skeptical courts—including two in this circuit—have refused to order such early discovery, doubting their authority to interfere with DOJ's death penalty authorization process. *See, e.g.*, *United States v. Haynes*, 242 F. Supp. 2d 540, 541 (W.D. Tenn. 2003) (holding that the government's refusal to disclose materials supporting its death penalty recommendation "is a matter of prosecutorial discretion unreviewable by this Court"); *United States v. Shakir*, 113 F. Supp. 2d 1182, 1190 (M.D. Tenn. 2000) (holding that to order pre-authorization disclosure "would exceed the Court's jurisdiction" and "would violate the constitutionally mandated separation of powers"). This Court has already noted the Executive's prosecutorial discretion to manage the DPP. *See* R. 382. In light of that prerogative, the Court cannot order the discovery Slone seeks since due process does not mandate disclosure well over a year ahead of trial.

## I. *Brady* Does Not Require Disclosure at the Death Penalty Authorization Stage

Because *Brady* disclosure is a trial right, Slone is not entitled to discovery at this early stage. Rooted in due process, *Brady* only requires disclosure of favorable evidence "material either to guilt or to punishment" in order to avoid "an unfair trial to the accused." 373 U.S. at 87–88; *see also United States v. Ruiz*, 536 U.S. 622, 628 (2002) (explaining that *Brady*

arises from the Constitution's "basic 'fair trial' guarantee").  Given that foundation, the right to disclosure is limited to the final adjudication of a defendant's "life" or "liberty."  U.S. Const. Amend. V.  The Constitution thus only requires the government to disclose favorable evidence regarding guilt or sentencing "in time for its effective use *at trial*."  *See United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994) (emphasis added).

And since *Brady* is anchored to trial, defendants have no general right to pretrial disclosure of all useful evidence that would merely aid their preparation.  *See Ruiz*, 536 U.S. at 628.  Such an expansive right would amount to a constitutionally mandated open file policy, but the Due Process Clause does not go so far.  *See United States v. Bagley*, 473 U.S. 667, 675 (1985).  To be sure, nothing in the Constitution prevents the prosecution from disclosing more than *Brady* requires.  For example, Federal Rule of Criminal Procedure 16 actually requires the government to disclose covered materials "upon a defendant's request"—in other words, immediately.  *See* Fed. R. Crim. P. 16.  And in capital cases like Slone's, the prosecution must disclose its witnesses "at least three days before commencement of trial."  *See* 18 U.S.C. § 3432.  But Slone does not invoke either Rule 16 or § 3432, and neither applies to the discovery motion now under consideration.  And, regardless of what the Constitution permits, Slone's presentation to the DOJ Capital Case Unit is ultimately irrelevant to *Brady*.

Measured by Slone's right to a fair trial, the prosecution's refusal to immediately disclose the evidence Slone seeks would only violate *Brady* if any further delay could make a difference to his trial's result.  *See United States v. Spry*, 238 F. App'x 142, 147–48 (6th Cir. 2007).  Delayed disclosure of *Brady* evidence does not automatically violate the Constitution.  *See Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998).  Even disclosure at

or shortly before trial creates no problems in most cases because the defense remains able to use the disclosed favorable evidence effectively. *See, e.g.*, *United States v. Crayton*, 357 F.3d 560, 569 (6th Cir. 2004) (finding that the defendant suffered no prejudice due to the government's failure to provide impeachment material until shortly before witness's testimony). Only when delay makes the effective use of evidence at trial impossible does it threaten a fair trial. Thus, the government violates its *Brady* obligations when timing becomes material—in other words, when delay would prejudice Slone. *See Joseph v. Coyle*, 469 F.3d 441, 471 n. 21 (6th Cir. 2006). But despite *Brady*'s focus on effective use, prejudice in this context is judged by the delay's effect on a trial's *accuracy*, not by its impact on the defendant's ability to prepare. *See United States v. Agurs*, 427 U.S. 97, 113 & n. 20 (1976). So, delay is material, and thus a violation of *Brady*, only if "there is a reasonable probability that, had the evidence been disclosed to the defense" at the time in question, the outcome of Slone's trial would be different. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Bagley*, 473 U.S. at 682). The time in question, of course, is now.

Slone has not attempted to show such prejudice. He does not even suggest that the government's current refusal to disclose will have any impact on the reliability of his trial. And with good reason: The Court has not even set the trial date. Since trial in this case is well over a year away (perhaps two), there is no reasonable chance that the government's refusal to disclose *Brady* evidence so far in advance could have any appreciable impact on a jury's verdict. Depending on the nature of the evidence, as already noted, even withholding disclosure until trial is underway is not necessarily material. *See Crayton*, 357 F.3d at 569. At this stage in Slone's case any effect on a jury is exceedingly unlikely.

True, this is a capital case presenting special concerns, but none of those concerns require disclosure so early. *See Murray v. Giarratano*, 492 U.S. 1, 8–9 (1989) (plurality) ("The finality of the death penalty requires a greater degree of reliability when it is imposed." (internal quotation marks omitted)). The heightened complexity and need for reliability associated with a capital trial no doubt will require disclosure of certain *Brady* material earlier than due process would otherwise require in a non-capital case. But that said, Slone has not offered any reason to suspect that the prosecution's failure to disclose potential *Brady* material yet even slightly compromises his ability to effectively use that evidence at trial. And besides, the prosecution has so far erred on the side of immediate disclosure beyond what the Constitution requires. *See* R. 357 at 5. The government's refusal to disclose Jencks Act material, its witnesses, and its death penalty analysis are the only limited exceptions. This cooperation strongly suggests that once further delay would impede Slone's effective defense at trial, the government will immediately disclose all favorable evidence covered by *Brady*. The Court, however, can always remedy any possible prejudice caused by delay through a continuance or recess. *See Crayton*, 357 F.3d at 569. Given that backstop there is no reason to jump the gun.

## II.     The Court Has No Inherent Power To Order the Discovery Slone Seeks

Since no binding rule requires immediate disclosure, this Court cannot order the discovery Slone requests for the same separation of powers reasons that forbid it from ordering the DOJ to hear his mitigating evidence on a particular schedule. *See* R. 382. Slone has no substantive or procedural rights whatsoever in the Death Penalty Protocol. *Id.* at 4–5. He thus has no entitlement to discovery at the death penalty authorization stage, giving this Court nothing to enforce.

While the Sixth Circuit has suggested that district courts "may have some inherent power" to order discovery beyond the requirements of the Constitution, statute, or rules of criminal procedure "when justice requires it," *see Presser*, 844 F.2d at 1285 n.12, that power—if it even exists—is not a license for courts to trample on the Executive's turf. As the Court already explained, the DOJ's process for deciding whether to seek the death penalty is within the Executive's core prosecutorial discretion. R. 382 at 10–11. *Accord Haynes*, 242 F. Supp. 2d at 541 ("[T]he United States Attorney's refusal to disclose . . . is a matter of prosecutorial discretion unreviewable by this Court."). If the DOJ wants a process that is "strictly one-way"—where only the defendant presents to the government and not also the other way around—that is the Executive's prerogative. *See Shakir*, 113 F. Supp. 2d at 1189 n.8 (citation omitted). This Court may not decree otherwise. And besides the need to respect prosecutorial discretion, whatever inherent power to manage discovery the Court may have is limited to its own proceedings. R. 382 at 8. To order discovery within an entirely executive proceeding, in the absence of any legal entitlement enforceable by the Court, "would exceed the Court's jurisdiction." *Shakir*, 113 F. Supp. 2d at 1190. As such, the Court cannot justify granting Slone's motion based on its inherent power.

## III. The Right to Effective Assistance of Counsel Does Not Require Discovery

Slone also fundamentally misunderstands the Sixth Amendment right to effective assistance of counsel. Slone's counsel thus far has been anything *but* ineffective. Quite to the contrary, defense counsel's zealousness knows few bounds. And that is all to the good, especially in a capital case. But unless the state interferes with the lawyer-client relationship or defense strategy, counsel's effectiveness is judged by his *performance*—in other words, his representation. *See Strickland v. Washington*, 466 U.S. 668, 686–87 (1984) (explaining

that unless government impedes "the ability of counsel to make independent decisions about how to conduct the defense," constitutionally ineffective assistance requires errors by counsel. So, while the failure to *seek* discovery under *Brady* might amount to ineffective assistance, the Court's failure to *grant* such discovery is in no way an error of representation. *See Badley v. United States*, 48 F. App'x 163, 166 (6th Cir. 2002) (explaining that ineffective assistance based on the failure to seek disclosure "requires a showing of reasonable probability that if a motion had been made, *it would have been granted* and would have changed the outcome of the case") (emphasis added). The Sixth Amendment hardly transforms every potential error of the Court into an error of counsel. And since disclosure has nothing at all to do with an attorney's freedom to manage his client's defense, the constitutional right to counsel is not an independent font of discovery. Slone thus cannot obtain under the Sixth Amendment what he was denied under the Fifth.

## CONCLUSION

Since neither the Constitution nor the Court's inherent power supports the immediate, wide-ranging discovery Slone seeks, the Court leaves of the remaining questions raised by the parties for another day. It is accordingly **ORDERED** that Slone's discovery motion, R. 352, is **DENIED**.

This the 29th day of October, 2013.



Signed By:

*Amul R. Thapar*

United States District Judge