UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff/Respondent, ) <br> ) <br> V. ) <br> ) <br> EUGENE SLONE, ) <br> ) <br> Defendant/Petitioner. ) | Crim No.: 6:12-cr-00028-GFVT-HAI-1 <br> Related Civ No.: 6:16-cv-00076-GFVT-HAI <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

*** *** *** ***

This matter is before the Court on the Recommended Dispositions filed by United States Magistrate Judge Hanly A. Ingram. The Defendant, Eugene Slone, first filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255. [R. 747.] Judge Ingram reviewed the motion, and prepared a Recommended Disposition. [R. 840.] Mr. Slone filed objections to this Recommendation. [R. 844.] The United States filed a response to those objections. [R. 845.]

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Recommended Disposition or else waive his rights to appeal. In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007). A general objection that fails to identify specific factual or legal issues from the recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and wastes judicial economy. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). When no objections are

made, however, this Court is not required to "review . . . a magistrate's factual or legal conclusions, under a de novo or any other standard . . . ." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Parties who fail to object to a Magistrate's report and recommendation are also barred from appealing a district court's order adopting that report and recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Mr. Slone filed timely objections to the initial Recommended Disposition. [R. 844.] The Court acknowledges its duty to review Mr. Slone's filings under a more lenient standard than the one applied to attorneys because he is proceeding *pro se*. *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985). Under this more lenient construction, the objections are sufficiently definite to trigger the Court's obligation to conduct a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the pleadings, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules. For the following reasons, Mr. Slone's objections will be **OVERRULED**.

**I**

Judge Ingram sets forth the factual and procedural background of the case in his initial Recommended Disposition. The Court mentions only key facts to frame its discussion and analysis, incorporating Judge Ingram's discussion of the record into this Order.

Mr. Slone was charged with one count of conspiring to distribute oxycodone. [R. 1.] Afterwards, he hired Brandon Storm to represent him. [R. 13.] A Superseding Indictment was then issued in August that added eleven codefendants. [R. 18.] Two months later, Slone added Martin Pinales and Candace Crouse to his defense team. [R. 117, 118.] Then, in December 2012, a Second Superseding Indictment was issued, which charged Slone with "killing with the intent to retaliate for providing information to law enforcement." [R. 129; R. 840 at 2.] As a

result of these charges, the government informed Slone's attorneys that it intended to seek the death penalty and moved the Court to declare the case complex. [R. 148.] So, Slone's counsel asked the Court to appoint an attorney with capital litigation experience, *i.e.* learned counsel. [R. 165.] The Court granted the government's request to deem the case "complex" under the Speedy Trial Act. [R. 174.] And, the Court appointed David Baugh as learned counsel for Slone. [R. 199.] Slone moved unsuccessfully to dismiss the Second Superseding Indictment. [R. 324, 357.] After a presentation to the Capital Crimes Unit, the government filed notice that it would not seek the death penalty. [R. 431.] As a result, Mr. Baugh withdrew as counsel. [R. 437.]

Again, in February 2014, Mr. Slone made a motion, accompanied by a Speedy Trial waiver[1], for the Court to declare the case complex. [R. 499.] Mr. Slone's request was granted. [R. 456.] As the case prolonged, Mr. Slone exhausted his retainer and the Court appointed Mr. Storm and Ms. Crouse as counsel under the Criminal Justice Act. [R. 475.] Mr. Slone moved for another continuance in September 2014, attended by a Speedy Trial waiver, to November. [R. 513, 518.] The trial then received its final date of January 20, 2015. [R. 523.]

A week before trial, the defense learned for the first time who the United States' witnesses were and what they said about Mr. Slone's involvement in the murders. [R. 778-3 at 8.] As a result of discussions about these materials, Mr. Slone asked for a plea deal. *Id.* Mr. Slone was offered a 25-year binding plea sentence in exchange for pleading guilty to all three counts—a "*per se* lenient" sentence. [R. 635; R. 747-7 at 28-29.]

Then, on January 16, 2015, Mr. Slone pleaded guilty in front of Judge Thapar. [R. 633.] For the murders in Counts Two and Three, Mr. Slone admitted that:

> (b) On June 25, 2012, Drug Enforcement Administration (DEA) agents executed a search warrant at the residence of Ruth Beckner in Manchester, Kentucky, where the

---

[1] While Mr. Sloan signed a Speedy Trial waiver, that waiver does not factor into this Court's decision. Judge Thapar's decision to continue the trial was necessary because of the complexity of the case.

> Defendant also lived. As a result of this search, the Defendant believed that someone had provided information to federal agents regarding his oxycodone distribution activities. The Defendant and others ultimately concluded that those informants were Davey Sparkman and Keisha Sexton.
>
> (c) After the DEA's search on June 25, 2012, the Defendant conspired and agreed with others to kill Davey Sparkman and Keisha Sexton in retaliation for their believed cooperation with law enforcement. Specifically, the Defendant provided cash to another member of the conspiracy as payment to kill Sparkman and Sexton. On July 19, 2012, the Defendant contacted Sparkman and Sexton and directed them to an abandoned mine site in Knott County, Kentucky, for a meeting. The Defendant did so with the specific knowledge that members of the conspiracy would be waiting to kill them upon their arrival. When Sparkman and Sexton arrived, they were shot to death and the vehicle they were riding in was set on fire.

[R. 840 at 3] [citing D.E. 635 at 3.] Mr. Slone's plea deal also included a broad waiver provision that precluded any right to collaterally attack his plea, conviction, or sentence except for claims of ineffective assistance of counsel. *Id.* at 3-4. On May 19, 2015, Mr. Slone was sentenced to 300 months imprisonment with no presentence report. [R. 715, 718.]

On May 12, 2016, Mr. Slone filed his Motion to Vacate pursuant to § 2255, alleging four claims relating to ineffective assistance of counsel. [R. 747.] Because key facts were in dispute an evidentiary hearing was held. [R. 799.] Mr. Slone was appointed counsel for that hearing. [R. 804.] During the hearing Mr. Slone, Mr. Storm and Ms. Crouse testified, and were questioned by both sides. [R. 822.] Despite not hearing each other's testimonies, Mr. Storm and Ms. Crouse's testimonies were consistent. Mr. Slone's testimony, on the other hand, contradicted his motion and affidavits. [R. 747 at 14; 747-1 at 8; R. 786 at 21.] Included in these contradictions was his live retraction of the written allegation that Mr. Storm coached him to lie at his rearraignment hearing. [R. 824 at 43, 67-68.] Mr. Slone also contradicted the sworn testimony of his rearraignment when he claimed to be innocent at the evidentiary hearing. [R. 837 at 4-5; R. 825 at 38-39.] And, Mr. Slone's proclamations of innocence contradict his

4

interview with Agent Richard Dalrymple. [R. 825 at 81-89.] Agent Dalrymple's report conveyed Mr. Slone's confession that he paid $10,000 to kill Davey Sparkman. *Id.* at 87.

On November 9, 2017, Judge Ingram issued a Report and Recommendation, recommending all of Mr. Slone's claims be denied. [R. 840.] Mr. Slone objected to that Recommendation. [R. 844.] The government filed a response to those objections. [R. 845.]

## II

As to Mr. Slone's Motion to Vacate [R. 747], filed on May 12, 2016, Judge Ingram outlined Mr. Slone's four claims as follows:

> (1) Ineffective assistance of Counsel during Plea Negotiations which caused Defendant to Accept the Government's Plea Offer.
> (2) Ineffective Assistance of Counsel for Failures Related to Subject Matter Jurisdiction.
> (3) Ineffective Assistance of Counsel related to His Speedy Trial Act Rights.
> (4) Ineffective Assistance of Counsel for Waiving the Presentence Investigation Report.

[R. 840.] Judge Ingram thoughtfully considered each of these claims and this Court is in agreement with his conclusions. The Court now turns to Mr. Slone's specific objections to the Report and Recommendation. Under *Strickland v. Washington*, Mr. Slone must prove both deficient performance and prejudice to assert successfully an ineffective assistance of counsel claim. 466 U.S. 668, 687 (1984); *Pough v. United States*, 442, F.3d 959, 964 (6th Cir. 2006).

### A

Mr. Slone first objects to Judge Ingram's finding that the court had subject matter jurisdiction. [R. 844 at 2.] Specifically, he argues that the United States did not have subject matter jurisdiction under 18 U.S.C. § 1513(a)(1)(B) because there was no evidence that the victims cooperated with the government. Therefore, Mr. Storm and Ms. Crouse provided ineffective assistance of counsel when they failed to make that argument. [R. 844 at 4.] Mr.

5

Slone, however, cannot show that the Court lacked subject matter jurisdiction. And, certainly, he cannot show that his counsel was constitutionally deficient for not pursuing such an argument.

Indeed, Mr. Slone has failed to identify any case law which supports his position—that jurisdiction premised on § 1513 necessarily requires the victims to *be* informants. Nor does federal subject matter jurisdiction require that Mr. Slone *believe* his victims were informants. Instead, the status of the victims' cooperation "goes only to the merits of the case," and "does not affect the jurisdiction of the trial court to determine the case presented by the indictment." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (internal citations omitted); *see United States v. Williams*, 341 U.S. 58, 66 (1951) ("The circumstance that ultimately it is determined on appeal that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment."); *United States v. Diaz*, 52 Fed. App'x. 810, 811 (6th Cir. 2002) ("Defects in an indictment do not deprive a court of its power to adjudicate a case.")

Mr. Slone's trial counsel reasonably ascertained that pursuing a jurisdictional strategy was "fraught with peril" and almost certain to fail. [R. 810 at 19.] As the prosecution aptly points out, "even if an indictment fails to state an offense against the United States, jurisdiction is not lost." [R. 845 at 2]; *see Cotton*, 535 U.S. at 630 (indictment defects are not jurisdictional). But, in any event, an acquittal in federal court—for lack of jurisdiction—would have "pave[d] the way for a double-murder prosecution in state court." [R. 840 at 23.]

Mr. Slone counters that Kentucky Revised Statutes §§ 505.050 and 505.060 would preclude a subsequent state prosecution. [R. 840 at 23] [citing D.E. at 9.] He is wrong. Neither K.R.S. §§ 505.050 nor 505.060 would preclude state murder charges. *Id.* at 24. To the contrary, § 505.050(1)(a) allows for a subsequent prosecution where "[e]ach prosecution requires proof of a fact not required in the other prosecution." K.R.S. § 505.050(1)(a). Mr. Slone's federal

prosecution under § 1513(a)(1)(B) required a proof of fact not required for a state conviction. As Judge Ingram put it, "a state murder charge would not require the federal nexus required by § 1513 (or § 1512 for that matter)". [R. 840 at 24.] The Court, therefore, agrees with Judge Ingram that "[s]ubject matter jurisdiction is a red herring in this case." [*Id.* at 22.] Instead of opening Mr. Sloan to another capital punishment eligible prosecution, Mr. Slone's counsel negotiated a *per se* lenient plea deal. [R. 635; R. 747-7 at 28-29.] As a result, Mr. Slone cannot show prejudice and his first objection is **OVERRULED**.

B

Next, Mr. Slone objects to the Magistrate's finding that the government could have prosecuted under either §§ 1513 or 1512. [R. 844 at 5.] Specifically, Mr. Slone argues that the "government's position was that of retaliation only, not for retaliation *and/or* prevention," rendering unreasonable his trial counsels' fear of a superseding indictment. *Id.* at 5-6. The two-pronged *Strickland* standard still applies. 466 U.S. 668, 687 (1984); *Pough*, 442, F.3d at 964.

Mr. Slone's counsel reasonably evaluated the risk "that a grand jury could have found both that Slone killed the victims as retaliation for believed past cooperation *and* in order to prevent future testimony." [R. 840 at 23] [emphasis in original.] Mr. Slone's trial counsel determined that "if they pressed the issue of Slone's 'belief,' then the government could replace the [§ 1513] charge with one under § 1512, which carries the same harsh penalties." *Id.* Even worse, the prosecution would then have "an opportunity to amend or supersede the Indictment to *add a count under § 1512*." [R. 840 at 19] [emphasis added.]

The Second Circuit correctly noted that a single action can support a finding of "retaliation for [either] past actions" or "to prevent future testimony." *United States v. Brown*, 937 F.2d 32, 37 (2nd Cir. 1991). In *Brown*, the defendant was convicted under § 1513 for

7

threatening to retaliate against his girlfriend for cooperating in a federal investigation targeting Brown. *Id.* at 33. Brown appealed, alleging that a "taped telephone conversation in which he threatened to 'erase' [his girlfriend], establishes at most an intent to influence future testimony, but not an intent to retaliate for past information proffered." *Id.* The Second Circuit disagreed, holding the jury's finding was reasonable and consistent with the law because such "a threat may be construed to intend both retaliation and intimidation." *Id.* at 37.

Here, the Court is confident that the facts could allow a reasonable jury to find that Mr. Slone conspired to kill in retaliation for past government cooperation *or* to prevent future cooperation. Like the threat in *Brown*, Mr. Slone's participation in the murder conspiracy could "be construed to intend both retaliation and intimidation." 937 F.2d at 33, 37. To be sure, the plea agreement's "factual admissions make it clear that the government's position was that of retaliation only." [R. 844 at 6.] That position, however, resulted from the negotiations which led to the plea deal—not because it was factually impossible to indict Mr. Slone under § 1512. [R. 845 at 2.]

Mr. Slone's attorneys advised him prudently, as Mr. Slone had nothing to gain from "press[ing] the issue of [his] 'belief.'" [R. 840 at 23.] Without any authority to support his theory to the contrary, Mr. Slone cannot defeat the strong presumption—and other evidence showing—that his trial counsel satisfied their constitutional obligations. *Strickland*, 466 U.S. at 688 (citing *Michel v. Louisiana*, 350 U.S. 91 (1955)).

Nor can Mr. Slone show prejudice. *Id.* at 687. As noted before, had Mr. Slone's counsel "pressed the issue of [his] belief," he may have been liable under § 1512 in addition to § 1513. [R. 840 at 23.] On the other hand, defeating the federal indictment would only have "pave[d] the way for a double-murder prosecution in state court." *Id*. Under the best-case scenario, the

8

United States would have amended the indictment to bring § 1512 charges, "*which carr[y] the same harsh penalties.*" *Id.* [emphasis added.] Instead, his counsel negotiated a "*per se* lenient" deal with double murder charges pending. Mr. Slone's second objection is **OVERRULED**.

C

Next, Mr. Slone objects to the Recommended Disposition because Judge Ingram determined that his plea was valid. [R. 844 at 9.] Mr. Slone claims that, "Given his age, medical condition, and the abolishment of the possibility of parole in the federal system, it was patently unreasonable for [his] trial counsel not to pursue every conceivable defense." *Id.* The Court disagrees.

First, the plea negotiated by Mr. Slone's trial counsel was reasonable in light of risks associated with other defense strategies—strategies which this Court dispensed with above. Mr. Slone was aware of his age, health, and parole ineligibility when he accepted his deal; such *post hoc* arguments are meritless. He has, therefore, failed to demonstrate the first prong of *Strickland v. Washington*, which requires a defendant to prove *both* deficient performance and prejudice to assert successfully an ineffective assistance of counsel claim. 466 U.S. 668, 687 (1984) (emphasis added); *Pough*, 442, F.3d at 964.

During rearraignment, Judge Thapar ensured Mr. Slone understood his rights, and confirmed that his plea was entered into knowingly and willingly. [R. 840 at 13]; *see Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990) ("[W]here the court has scrupulously followed [Rule 11] procedure, the defendant is bound by his statements in response to that court's inquiry.") Mr. Slone's assertions that his counsel misled him at this critical phase are inconsistent with the facts and his own sworn testimony to the contrary. [R. 840 at 11] [citing D.E. 782 at 13-14, 18, 22-23, 26, 31-32 ("[T]hese allegations contradict Slone's statements at his plea colloquy. At that

hearing, Slone stated under oath that he was offered no promises beyond the terms of the plea agreement and that he understood his agreed sentence and his waiver of his appellate and collateral attack rights.")] Tellingly, Mr. Slone contradicted himself yet again at the evidentiary hearing held to resolve this matter. [R. 824 at 43, 67-68] [retracting his written allegation that Mr. Storm persuaded him to lie at rearraignment]; [R. 837 at 4-5; R. 825 at 38-39] [claiming innocence despite guilty plea already entered into]. Standing by themselves, Mr. Slone's inconsistent statements undermine any purported Rule 11 deficiency. His third objection is **OVERRULED**.

**D**

Mr. Slone has not objected to either of Judge Ingram's findings as to the third and fourth Ineffective Assistance of Counsel claims, regarding counsels' waiver of Mr. Slone's speedy trial rights and Presentence Investigation Report, respectively. Accordingly, the Court is not required to review those issues *de novo* or under any other standard. *Thomas*, 474 U.S. at 150. Nonetheless, having considered the record, including the pleadings, relevant case and statutory law, as well as applicable procedural rules, the Court agrees with Judge Ingram that Mr. Slone's trial counsel did not err in waiving his speedy trial rights or Presentence Investigation Report. The Court hereby adopts the Recommended Disposition's findings as to claims three and four and rejects Mr. Slone's claims of deficient counsel.

**III**

After reviewing *de novo* the entire record, as well as the relevant case law and statutory authority, the Court agrees with Judge Ingram's thorough analysis of Mr. Slone's claims. The Court also denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) as to each issue asserted. Under Rule 11 of the Federal Rules Governing § 2255 Proceedings, the "district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant . . . ." Rules Governing Section 2255 Proceedings, Rule 11. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth by the United States Supreme Court, this standard requires the petitioner to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." See *Slack v. McDaniel,* 529 U.S. 473, 484; *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Under this standard, the Court believes that this order, which adopts and incorporates by reference the Magistrate Judge's Recommendation, is not sufficiently debatable to issue a certificate of appealability.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant/Movant Eugene Slone's Objections to the Recommended Disposition [**R. 844**] are **OVERRULED**;

2. The Magistrate Judge's Recommended Disposition [**R. 840**] is **ADOPTED** as and for the Opinion of this Court;

3. The Defendant's Motion to Vacate [**R. 747**] is **DISMISSED WITH PREJUDICE**;

4. A Certificate of Appealability is **DENIED** as to all issues raised by the Defendant; and

5. **JUDGMENT** in favor of the United States will be entered contemporaneously herewith.

This the 13th day of August, 2019.

Gregory F. Van Tatenhove
United States District Judge